

**Signed and Filed: October 31, 2010**

_____
**DENNIS MONTALI
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                                ) Bankruptcy Case
                                     ) No. 09-31941DM
ROBERT G. QUINTERO, dba              )
CONTINENTAL REALTY SERVICES,         ) Chapter 7
                                     )
                      Debtor.        )
_____)
E. LYNN SCHOENMANN,                  ) Adversary Proceeding
                                     ) No. 10-3019DM
                      Plaintiff,     )
                                     )
v.                                   )
                                     )
PARIMAL BHUPENDRA PATEL,             )
BHUPENDRA B. PATEL, RITA PARASNIS,   )
individually and collectively doing  )
business under the fictitious name   )
of BPR Properties, Inc.,             )
                                     )
                      Defendants.    )
_____)
```

MEMORANDUM DECISION FOLLOWING
TRIAL TO RECOVER COMMISSION

I. <u>Introduction</u>

On September 13, 2010, the court conducted a trial in this matter. Plaintiff, E. Lynn Schoenmann, Trustee ("Trustee"), appeared and was represented by Dennis D. Davis, Esq., one of her attorneys. Defendants appeared and were represented by Patricia G. Rosenberg, Esq., one of their attorneys. After the evidence was presented and oral argument made, the court requested further

-1-

briefing on one discrete matter. Thereafter, the matter stood ready for decision.

For the reasons stated below, the court will reject the Trustee's contentions and enter judgment in favor of defendants.

II. <u>Facts</u>[1]

Robert G. Quintero, dba Continental Realty Services ("Debtor"), is a real estate broker. Defendant Parimal Bhupendra Patel ("Perry") is well-educated in hotel operations and management, has extensive experience in various aspects of managing and acquiring hotel properties, and is involved in various family businesses, including one known as BPR Properties, Inc. ("BPR"), with his father, Bhupendra B. Patel ("BB") and his sister, Rita Parasnis ("Rita").

BB is the principal of the various business activities among himself, Perry, Rita and other family members. In fact, he appears to be more like the patriarch of the family, directing the affairs of the businesses and making all final decisions on such matters as property acquisition and financing. Perry does not make crucial decisions without consulting his father.

In August, 2006, Perry contacted Debtor about acquiring hotel properties in the San Francisco bay area. Because Debtor was not willing to disclose to Perry or BPR the particulars of any hotel property that might appeal to them without appropriate contractual protection of his own interests, he submitted to Perry, and Perry promptly executed, a Confidentiality and Non-Circumvention Agreement ("Agreement") dated August 21, 2006.

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

Case: 10-03019    Doc# 16    Filed: 10/31/10    Entered: 11/01/10 14:39:10    Page 2 of 7

At trial Perry testified that he did not read the Agreement. Even if Perry did not read the Agreement (which is doubtful), he initialed every page. Further, based upon his intelligence, education, and experience, he clearly was able to understand the document; whether or not he actually read it is of no consequence.

The Agreement referred generally (without names and addresses) to two hotel properties on the San Francisco peninsula and referenced other properties that would be disclosed upon request. It was Debtor's intention at all times to make information about hotel properties available to Perry and BPR on a confidential basis, and clearly anticipated serving as a selling agent for BPR if and when it chose to purchase any property disclosed by Debtor if he could not act as listing agent for any seller. He was not a listing agent with reference to any hotel property that he planned to disclose to Perry at the time he prepared and signed the Agreement.

The critical language of the Agreement that determines the outcome of this dispute is found in paragraph 4, entitled Non-Circumvention. That paragraph provides, in part:

> [BPR] agrees that it shall not submit offers, compete, or interfere in the negotiations, contact the sellers, their agents, representatives or officers, or purchase the property or properties without the [Debtor's] prior knowledge and written approval <u>and [BPR's] agreement, if necessary to pay a 2% brokerage fee</u> unless a formal partnership or other agreement has been reached by the parties to form a partnership or other arrangement for the properties' acquisition. (Emphasis added.)

Debtor hoped to obtain a listing agreement for any hotel Perry might have been interested in and testified that the quoted language was necessary in case he did not obtain such a listing agreement and thus obtain a listing agent's commission upon any

-3-

sale.

Perry did not disclose the existence of the Agreement to BB or Rita after he executed it. Three days after execution, however, Debtor provided Perry with information concerning the availability of the Shattuck Hotel ("Hotel") in Berkeley, California. Perry expressed interest in the Hotel, asked Debtor to arrange an inspection, and then indicated that he intended to make an offer on it. Debtor arranged with the general manager of the Hotel for Perry to visit and make a site inspection; instead Perry posed as a guest and visited the Hotel on his own.

After inspecting the Hotel, Perry asked for and Debtor prepared a Letter of Intent regarding purchase of the Hotel for $14,700,000 and payment of a 2% commission by the seller to Debtor.

The Letter of Intent was not signed, and when Perry disclosed to BB that the Hotel was available, BB informed Perry immediately that he had been dealing with another person and family friend, Bipin, who was acting as an intermediary with the owner of the Hotel ("Kakkar"). Perry terminated his discussions with Debtor and later, in April, 2007, BPR acquired Hotel for $13,750,000. In connection with BPR's acquisition of Hotel, Kakkar paid the Bipin a "finder's fee" of $200,000.

Debtor filed Chapter 7 on July 13, 2009. On February 5, 2009, Trustee sued Perry, BB and Rita to recover a commission in the sum of $275,000 in accordance with paragraph 4 of the Agreement. According to the Trustee's Trial Brief, BPR agreed to pay a 2% brokerage fee to Debtor if it circumvented Debtor and dealt directly with sellers of properties covered by the Agreement

-4-

without Debtor's prior knowledge and written approval.

III. <u>Discussion</u>

Defendants raise several defenses, including that the Agreement is vague and ambiguous, and thus enforceable; that there was no breach of the Agreement; that paragraph 4 of the Agreement is an unenforceable, invalid penalty; and that Debtor was not the procuring cause of BPR's acquisition of the Hotel.

Because defendants asserted for the first time in their Trial Brief that portions of the Agreement constituted an invalid penalty, Trustee maintained that such an affirmative defense had been waived because it had not been raised in an answer to the complaint defendants filed. Both sides briefed the issue after trial.

While there is no question that BPR did not comply with Paragraph 4 of the Agreement when it submitted the offer to Kakkar and thereafter acquired the Hotel, the ambiguous provisions of that Agreement must be construed against Debtor as the drafting party, and therefore, against Trustee. There was no listing agreement, and therefore Debtor's only source of remuneration was an agreement to pay a 2% brokerage fee. But there was no such agreement. It is fundamental law, and no citation is needed, that an agreement to agree is unenforceable and while it may well be that Debtor intended to obtain 2% of any selling price from the buyers of any disclosed property if Debtor could not obtain a listing agreement and thus be paid a traditional listing agent commission, the ambiguity in the language and the clear indication that there needed to be an agreement (there was none) before defendants could be obligated to pay Debtor anything, is fatal to

-5-

Case: 10-03019    Doc# 16    Filed: 10/31/10    Entered: 11/01/10 14:39:10    Page 5 of 7

Trustee's case.

Defendants are correct in pointing out that the absence of such an agreement, coupled with the lack of precision as to what the "brokerage" fee would be calculated upon constitutes the omission of an essential element, thus rendering the Agreement unenforceable.

Based upon this conclusion, the court does not need to reach the questions of whether Debtor provide anything of value to the defendants; whether there was a breach of the Agreement; or whether the Agreement includes an enforceable penalty.

Perry knew what he was getting into when he signed the Agreement. Once he learned of BB's involvement with Bipin and interest in the Hotel he was in a difficult position vis-a-vis Debtor because he had signed the Agreement. He had no choice but to carry out his father's instructions and terminate his dealings with Debtor. Had BB not been dealing with Bipin it seems reasonable to presume that BPR would have continued to work with Debtor and acquired the Hotel, resulting in either payment to Debtor of a listing commission by Kakkar, or execution of some sort of agreement that would have produced a commission for debtor.

That sort of speculation, however, is not enough to bind defendants to an agreement to agree. Plain and simple, the Trustee has tried to make "a silk purse out of a sow's ear", relying on sloppy, inartful and imprecise language. Unfortunately for the Trustee and the estate, the quoted language is not enough and defendants are entitled to judgment in their favor.

IV. <u>Conclusion</u>

| | |
|---|---|
| 1 | Counsel for defendants is to submit a form of judgment in |
| 2 | favor of all defendants for the reasons set forth in this |
| 3 | Memorandum Decision, and awarding them their costs. |
| 4 | **END OF MEMORANDUM DECISION** |